UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERRIE PRUTSMAN,

                          Plaintiff,

               v.

ADDISON CENTRAL SCHOOL BOARD, et al.,

                          Defendants.
_____

<u>DECISION AND ORDER</u>

16-CV-6080L

## PRELIMINARY STATEMENT

Plaintiff Terrie Prutsman ("Prutsman") commenced this action pursuant to 42 U.S.C.

§-1983 against defendants Addison Central School Board (the "Board") and Joseph DioGuardi

("DioGuardi"), individually and in his capacity as Superintendent of Schools for the Addison

Central School District (the "District"). Prutsman, a former employee of the District, alleges that

the Board and DioGuardi wrongfully refused to provide her health insurance benefits during her

retirement in violation of her rights to due process and equal protection under the United States

Constitution.

Pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, and Prutsman's cross-motion for leave to file an amended

complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. (Dkt. ## 6; 8).

Defendants oppose Prutsman's cross-motion. (Dkt. # 10).

By Order dated December 12, 2017, the Court directed the parties to further brief "the

question of whether the availability of an Article 78 proceeding [pursuant to New York Civil

Practice Law and Rules ("CPLR")] would defeat plaintiff's proposed amended due process claim[.]" (Dkt. # 11). The parties completed their briefing of that question on January 3, 2018. (Dkt. ## 12; 13).

## BACKGROUND[1]

Prutsman began working for the District on February 5, 1990. (Dkt. # 8-2 at ¶ 9). On July 8, 2013, Prutsman signed a Memorandum of Agreement ("MOA") regarding her position as a Senior Account Clerk Typist with the District. (Dkt. # 1-1). The MOA, signed on behalf of the District by DioGuardi, detailed the terms and conditions of Prutsman's employment from July 1, 2013 through June 30, 2014. (*Id.*). Relevant for purposes of Prutsman's PAC, the MOA's "Health Insurance" section specified, "[u]pon retirement, the Sr. Account Clerk Typist shall receive health and dental insurance for life in either an individual or family plan based upon marital status and need." (*Id.*; Dkt. # 8-2 at ¶ 10).

On December 2, 2013, Prutsman took a six-month medical leave from work. (Dkt. # 8-2 at ¶ 11). At the end of those six months, the leave was extended for an additional six months, totaling an absence of one year. (*Id.* at ¶ 12). By letter dated October 30, 2014, Prutsman requested that the District make a "reasonable accommodation" and extend her medical leave again, as she would be unable to return to work as of December 2014. (*Id.* at ¶ 13; Dkt. # 1-2). According to Prutsman, she made this request to enable her to await the New York State Retirement System's decision regarding her disability retirement application. (Dkt. # 8-2 at

---

[1] The Court draws the following facts from Prutsman's proposed amended complaint ("PAC"). The facts alleged in the PAC are assumed to be true for purposes of Plaintiff's motion to amend. *See, e.g.*, *Ortiz v. Westchester Med. Ctr. Health Care Corp.*, No. 15-cv-5432 5432, 2016 WL 6901314, *1 n.1 (S.D.N.Y. Nov. 18, 2016) (citing *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 366 n.1 (S.D.N.Y. 2014)). While the PAC does not attach any of the exhibits to which it refers, it is apparent that it refers to the same exhibits as those attached to the original complaint. Therefore, for purposes of this Decision and Order, the Court will consider the exhibits attached to the original complaint as if they were submitted with the PAC.

¶¶ 14, 15).  The District did not acknowledge Prutsman's October 30, 2014, letter.  (*Id.* at ¶ 17).

Apparently, Prutsman's October 30, 2014, letter "crossed in the mail" with the District's October

31, 2014, letter to her, the contents of which are not detailed by Prutsman in the PAC.  (*Id.* at

¶ 16).

On December 4, 2014, Ken Forrester ("Forrester"), the District's School Business

Administrator, notified Prutsman that the Board had terminated her at the December 2, 2014,

Board meeting.  (Dkt. # 8-2 at ¶ 18).   On February 10, 2015, Forrester advised Prutsman to draft

a letter to DioGuardi "disagreeing with the fact that [DioGuardi] took [Prutsman] to the [Board]

as a termination."  (*Id.* at ¶ 21).  Forrester and Prutsman had no further communications.  (*Id.* at

¶ 22).

Prutsman alleges that DioGuardi did not contact her regarding her health insurance,

which prompted Prutsman to write DioGuardi "on or about March 3, 2015, requesting the

necessary paperwork to change the COBRA policy over to [Prutsman's] policy as a retiree of the

District."  (*Id.* at ¶ 22).   Yet Prutsman's own papers contradict that allegation, as she has not

submitted a March 3, 2015, letter from Prutsman to DioGuardi.  According to Prutsman's

exhibits, DioGuardi wrote Prutsman on March 3, 2015, stating:

> I have reviewed your letter dated February 11, 2015 and the
> associated materials you included with the letter, however nothing
> has changed the District's decision.  An employee only receives
> health insurance benefits when they have been an active participant
> in the plan at the time of retirement from the district.  I am sorry to
> inform you that since you were terminated by the [Board] on
> December 9, 2014, you do not qualify for this benefit.

(Dkt. # 8-3).[2]  On March 11, 2015, Prutsman wrote DioGuardi, stating, in full:

> Thank you for your reply on March 3, 2015.  Based upon the
> materials I provided previously, my retirement date precludes my

---

[2]  The December 9, 2014, date appears to be a mistake, as Forrester's December 4, 2014, letter indicated that the
Board terminated Prutsman as of December 2, 2014.

termination by the [Board]. (December 9, 2014). It is my understanding that your decision that I do not qualify for health insurance benefits is based on that termination date.

Enclosed is a Certificate of Group Health Plan Coverage stating that I have had continuous coverage for at least the last eighteen months, making me an active participant. At the time of my Disability Retirement determination, I was an active participant and continue to be.

I ask again for the necessary paperwork to complete the transition for my health insurance as a retiree of the District, based on my Article 15 Ordinary Disability Retirement determination, which was retroactive to January 22, 2014. A copy of the amended date and notice is enclosed.

(Dkt. # 1-3).[3] Prutsman's stance was that because the New York State retirement system had retroactively set her retirement date as January 22, 2014, which preceded defendants' decision to terminate her, she was entitled to retirement health benefits pursuant to the MOA. (Dkt. # 8-2 at ¶¶ 25, 30, 31, 32).

On March 27, 2015, DioGuardi responded to Prutsman's March 11, 2015, letter, indicating, "[defendants] have not changed our original position as nothing you have stated in your letter changes our decision." (Docket # 1-4). Prutsman alleges that she and the District had no further correspondence thereafter. (Docket # 8-2 at ¶ 23). However, on April 10, 2015, she requested a copy of the MOA and her termination letter from the District Clerk, Mary Berkan. (*Id.* at ¶ 34). The District sent Prutsman the MOA, the termination letter, and a copy of the minutes from the Board's December 2, 2014, meeting, at which she was terminated. (*Id.* at ¶ 35).

---

[3] *See, supra*, footnote 2.

**DISCUSSION**[4]

1.  <u>**Motion to Amend**</u>

Rule 15(a) of the Federal Rules of Civil Procedure directs a court to "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Forman v. Davis*, 371 U.S. 178, 182 (1962). This is a liberal standard, *see Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC.*, 797 F.3d 160, 190 (2d Cir. 2015), and within the court's discretion, *see Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

Nevertheless, a district court may deny leave to amend if the proposed amendment is futile. *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011). "An amendment to a pleading is futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). In other words, a proposed amended complaint must still contain "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The party opposing the amendment "bears the burden of establishing that an amendment would be futile." *Quintanilla v. Suffolk Paving Corp.*, No. 09-cv-5331, 2012 WL 4086805, *3 (E.D.N.Y. Sept. 17, 2012).

In determining whether a complaint is plausible, the court "accept[s] as true all nonconclusory factual allegations therein, and draw[s] all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief." *Panther Partners Inc. v. Ikanos Commc'n, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (citing

---

[4]  The Court first will address Plaintiff's motion to amend, as the adjudication of that motion will affect the resolution of Defendants' motion to dismiss the original complaint. *Cf. Goureau v. Goureau*, No. 12-cv-6442, 2013 WL 1499404, *4 (S.D.N.Y. April 10, 2013) ("[L]eave to amend is granted, and the Court accepts plaintiffs' Second Amended Complaint as the operative complaint in this case. . . . Defendants' motion for judgment on the pleadings is dismissed as moot.").

5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009)).  While the court is "free to consider documents that are incorporated into the complaint by reference or attached to the complaint as exhibits, or whose terms and effect are relied upon by the plaintiff in drafting the complaint," *Gryl ex rel. Shire Pharms. Grp. Plc. v. Shire Pharms. Grp. Plc.*, 298 F.3d 136, 140 (2d Cir. 2002), it cannot resolve fact-specific questions on the pleadings, *see Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).  "A court ruling on a [Rule 12(b)(6)] motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Anderson News, L.L.C.*, 680 F.3d at 185 (alterations and citations omitted).  "Thus, the appropriate question at this stage is not whether plaintiff will prevail on the facts as alleged in the complaint, but rather whether the claimant is entitled to offer evidence to support the claims." *Martinez v. LVNV Funding LLC*, No. 14-cv-00677, 2016 WL 5719718, *2 (E.D.N.Y. Sept. 30, 2016) (alterations and quotations omitted).

## 2. Procedural Due Process

In order to state a valid claim under 42 U.S.C. §-1983, a plaintiff must show that the conduct in question deprived him or her of a right, privilege, or immunity secured by the Constitution or the laws of the United States, and that the acts were attributable at least in part to a person acting under color of state law.  *See* 42 U.S.C. §-1983; *Washington v. Cty. of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004).  Where, as here, a plaintiff alleges violations of procedural due process, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

Courts examine procedural due process claims in two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second

examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).[5] Regarding the second step, generally, "'some kind of hearing' is required before the State can deprive a person of a protected property interest." *Jackson v. Roslyn Bd. of Ed.*, 438 F. Supp. 2d 49, 53-54 (E.D.N.Y. 2006) (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003)). However, "[w]hen reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) ("HANAC") (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984), and *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, (1986)). "In the latter case, the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy." *HANAC*, 344 F.3d at 880. "When the deprivation occurs in the more structured environment of established state procedures . . . the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *Id.*

The state actors' conduct is not random and unauthorized "if the state delegated to those actors the power and authority to effect the very deprivation complained of . . . [and] the concomitant duty to initiate the procedural safeguards set up by state law, even if the act in question was not . . . sanctioned by state law." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (quotations omitted). Moreover, the Second Circuit has held

---

[5] At this stage, defendants do not dispute that Prutsman has a property interest in retirement health insurance benefits, satisfying the first step of the procedural due process analysis. (Dkt. # 6-1 at 7-8). The Court will assume for purposes of this Decision and Order that Prutsman has a property interest in such benefits.

that the "random and unauthorized" exception "does not apply where the government actor in question is a high-ranking official with final authority over significant matters." *DiBlasio*, 344 F.3d at 302. (quotations omitted).

### 3. Parties' Arguments

Prutsman's proposed amendment is based on the exact same alleged conduct of defendants as the original complaint. Yet she seeks leave to "delete the allegation that the defendants' acts were arbitrary, capricious, malicious, etc., and replace those allegations with the allegation that the denial of plaintiff's health insurance coverage is based upon defendants' established state procedure." (Dkt. # 8-1 at 7).

Prutsman makes two references to an "established state procedure" in her PAC. First, she alleges that defendants had an "established state procedure to refuse to submit the required [retirement health benefits] paperwork to establish health insurance within the one-year leave of absence time frame." (Dkt. 8-2 at ¶ 24) (emphasis omitted). Second, she alleges, "defendants' denial of plaintiff's health insurance benefits was based upon an established state procedure of denying health insurance to employees such as the plaintiff who are eligible for health insurance based upon retirement." (*Id.* at ¶ 37) (emphasis omitted).

In support of her cross-motion to amend, Prutsman specifies that defendants' "established state procedure" is "clearly set forth in the [March 3, 2015,] letter from Joe DioGuardi where he states: An employee only receives health insurance benefits when they have been an active participant in the plan at the time of retirement from the district." (Dkt. # 8-1 at 7). Prutsman argues that because her MOA with the District makes no mention of the need to be an "active participant" at the time of retirement in order to receive the benefits, DioGuardi's reasoning must be based "upon *defendants' established state procedure*." (*Id.* at 8). By summarily denying her

these benefits, according to Prutsman, defendants violated her constitutional rights. (Dkt. # 8-2 at ¶ 42).

Defendants characterize Prutsman's proposed amendment as "swap[ing] one formulation of conclusory language for another," (Dkt. # 10 at 1-3), and oppose the PAC as futile, (*id.* at 10). They argue that the language in DioGuardi's March 3, 2015, letter does not "reflect a procedure put in place by the District; rather, it reflects the rationale being applied by the Superintendent in his act of interpreting the language of [the MOA]." (*Id.* at 7). Essentially, defendants argue that, as with the original complaint, the conduct Prutsman alleges is still, at best, a discrete, random and unauthorized act, and not in furtherance of an established state procedure. Therefore, given the availability of an Article 78 proceeding, according to defendants, Prutsman cannot state a viable constitutional due process claim. (*See generally* Dkt. # 6-1).

Finally, in their supplemental briefs, the parties dispute the sufficiency of the notice and Prutsman's opportunity to be heard prior to defendants' decision to deny Prutsman retirement health insurance benefits. (*See generally* Dkt. ## 12; 13).

## 4. Sufficiency of Prutsman's Proposed Amended Complaint

Here, the Court finds that defendants' argument that the availability of an Article 78 proceeding satisfied due process is premature at this stage of the case based on the record developed thus far. The decision in *Jackson v. Roslyn Board of Education*, 438 F. Supp. 2d 49 (E.D.N.Y. 2006) is persuasive in this regard. There, plaintiff, a former employee at defendant school district, brought a 42 U.S.C. §-1983 action alleging that defendants denied his employee disability retirement without due process. *Jackson*, 438 F. Supp. 2d at 51. The school district terminated plaintiff while his New York State application for disability retirement benefits was pending. *Id.* at 52. The State subsequently approved plaintiff's application and retroactively

established plaintiff's disability retirement date as the last day of his employment with the school district. *Id.* However, the school district had to enroll plaintiff in disability retirement benefits, and, despite plaintiff's requests, the school district refused to enroll him in the benefits. *Id.* Plaintiff alleged that this conduct "constituted a denial of his disability retirement benefits without notice and without an opportunity to be heard." *Id.*

The court denied defendants' motion to dismiss the due process claim, reasoning that it could not say "with any degree of certainty whether the defendants' act of merely refusing to entertain the plaintiff's application occurred within the context of established state procedures or if it was a random and unauthorized act[.]" *Id.* at 54. The court thought plaintiff's allegations warranted discovery to understand the basis for the school district's conduct. *Id.* at 54-55. Only then could the court decide whether the defendants "should have, or even could have, provided the plaintiff with any form of pre-deprivation process." *Id.* at 55.

Like the parties in *Jackson*, the parties here dispute whether DioGuardi's denial of Prutsman's retirement health insurance benefits was a random and unauthorized act, or pursuant to an established state procedure. Prutsman has alleged, in support of her new theory, that the Board was "vested with the supervision of schools within Steuben County, including the hiring and termination of teachers, and the provision of retirement benefits," and that defendants denied her health insurance benefits pursuant to an established state procedure without notice and an opportunity to be heard. (Dkt. # 8-2 at ¶¶ 6, 24, 37, 42). If this is true, "the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *HANAC*, 344 F.3d at 880. And even though defendants argue that DioGuardi's March 3, 2015, letter merely reflected his rationale for the denial of Prutsman's health insurance benefits, the Court at this point is neither inclined, nor permitted, to resolve that factual dispute.

Given the factual similarities with *Jackson*, the liberal standard against which Prutsman's cross-motion is to be judged, and the fact that "[t]he distinction between random and unauthorized conduct and established state procedures . . . is not clear-cut," *see Rivera-Powell*, 470 F.3d at 465, this Court finds that resolution of the parties' dispute is inappropriate at this stage of the case. The Court notes, as it did in its prior Order (Dkt. # 11), that the postdeprivation remedy of an Article 78 proceeding may be relevant to the outcome of this case. *See HANAC*, 101 F.3d at 882 ("there *is no* constitutional violation (and no available §-1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty"). However, the Court cannot yet say that the availability of that avenue is outcome determinative, as Prutsman should have at least the opportunity to present evidence regarding whether defendants' conduct was in furtherance of an established state procedure, and if so, whether she received due process.

Therefore, Prutsman is granted leave to file her PAC. This is not to say that Prutsman will ultimately prove her claims and prevail in the case. Nor is it to say that defendants' current arguments will not persuade this Court upon a more fully developed record. Rather, the case is in the pleading stage only and there is a sufficient basis to proceed. Resolution of the case on the merits is for another day.

**CONCLUSION**

For the above-stated reasons, Prutsman's cross-motion for leave to file her PAC (Dkt.

# 8) is **GRANTED**.  Prutsman shall file the PAC within 10 days of entry of this Decision and

Order.  Defendants' motion to dismiss (Dkt. # 6) is, therefore, **DENIED without prejudice**.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      February 13, 2018.